

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| PAMELA J. RENVILLE, | 1:15-CV-01024-CBK |
|---|---|
| Plaintiff, | |
| vs. | ORDER AND OPINION |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff Pamela Renville filed a complaint with this Court on June 1, 2015, claiming negligence against the United States of America pursuant to the Federal Tort Claims Act. This negligence action arises from a slip and fall accident that occurred at the Woodrow Wilson Keeble Memorial Health Care Center ("WWKM") in Sisseton, South Dakota. The defendant has moved for summary judgment. The Court is fully advised on the matter.

## FACTUAL BACKGROUND

Renville was born on November 6, 1955, in Sisseton, South Dakota. She is a member of the Sisseton Wahpeton Oyate Tribe and has lived in Sisseton, South Dakota, her entire life.

On January 11, 2013, Renville had a 3:00 p.m. appointment at WWKM in Sisseton, South Dakota. As she was driving to her appointment, she noticed the roads were still wet from rain that occurred the prior night and decided to drive more cautiously. Renville arrived at WWKM at approximately 3:15 p.m. and noticed the parking lot and sidewalk were wet. The temperature was approximately twenty-nine degrees Fahrenheit and the wind speed was eighteen miles per hour. She parked her

vehicle in the north parking lot and proceeded to walk south on the sidewalk toward the entrance. At the entrance of WWKM, an awning extends east and covers the sidewalk and part of the road of the circular driveway. Renville was walking under the north side of the awning when she allegedly slipped on a patch of ice and fell approximately fifteen to twenty feet from the door. Pl.'s Dep. 51: 1-6. She testified she did not see the ice when she fell. Id. at 53:25-54:1. When asked to describe the nature of the fall, Renville indicated, "I didn't sway or go like, you know, from being icy, I didn't sway or nothing. I was just walking and then I just kind of like I just fell on my butt." Id. at 58:3-5. Angela Johnson, an employee working at WWKM, witnessed the fall and was close enough to hear a loud popping sound. Johnson testified that no salt was placed outside and that there was ample time for the maintenance employees to put salt around the main entrance of the building.

At approximately 4:00 p.m., Renville was driven by ambulance to Prairie Lakes Hospital in Watertown, South Dakota. Dr. Casey Johnston evaluated the plaintiff's leg and determined she fractured her left tibial shaft and performed surgery on her the next day. Dr. Johnston had follow-up appointments with Renville on January 31, 2013, March 7, 2013, and April 4, 2013.

WWKM has its own Maintenance Department. In the wintertime, the maintenance crew at WWKM typically puts salt and sand on the ground near the main entrance every hour. Id. at 14:8-12. Winfield Thompson, one of the maintenance employees, testified that one spot of particular importance was the sidewalk by the entrance near the north edge of the awning, and that it was a normal occurrence for water

2

to accumulate and freeze on the sidewalk by the north side of the awning. W. Thompson Dep. 8:6-9:10, 11:10-22, 12:4-18.

The plaintiff has had prior injuries to her left leg. In 2009, she broke her left femur when she fell on the ledge of a sidewalk. As a result, she underwent surgery to have a rod placed in her left leg. Renville also suffers from left foot drop, which causes difficulty in lifting her left leg. Dr. Johnston noted that "[m]ost people with a foot drop will walk with what we call a steppage gait[,] [m]eaning they will look like they're trying to go up a step and their foot tends to hit on their toe first instead of the heel, as would be a normal gait pattern." Johnston Dep. 13:2-6. Lastly, Renville has screws in her knee from multiligament injuries. When asked whether the plaintiff's prior leg complications contributed to her fall on January 11, 2013, Dr. Johnston replied, "The fact that she has pre-existing osteoarthritis and pre-existing foot drop probably would put her at risk of falling just in and of themselves, yes." Id. 21:18-23. The plaintiff has designated Dr. Johnston as an expert in this case.

## STANDARD OF REVIEW

According to Rule 56(a) of the Federal Rules of Civil Procedure, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex v. Catrett, 477 U.S. 317, 327 (1986) (*quoting* Fed. R. Civ. P. 1). The moving party has the burden of establishing the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56 (c).

3

Once the moving party has met its burden of demonstrating there is no genuine dispute of material fact, "a moving party may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1107 (8th Cir. 1998). A genuine dispute arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 206 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court must view the admissible evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences drawn from the evidence. Country Life Ins. Co. v. Marks, 592 F.3d 896, 898 (8th Cir. 2010). However, the scope of admissible evidence is quite finite: "Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment." Paulsen v. Ability Ins. Co., 906 F. Supp. 2d 909, 911 (D.S.D. 2012) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed. 202 (1986)).

## ANALYSIS

### I. Federal Tort Claims Act

The Federal Tort Claims Act is a limited waiver of the United States' sovereign immunity. 28 U.S.C. § 1346(b)(1) explains:

> The district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the

4

> claimant in accordance with the law of the place where the
> act or omission occurred.

"When the FTCA action arises at an IHS facility within the territory of an American Indian Reservation, this Court must apply the substantive law of the state in which the reservation is located." Gunville v. United States, 985 F.Supp.2d 1101, 1105 (D.S.D. 2013). In this case, the negligent act or omission alleged by the plaintiff occurred at an Indian Health Services facility within the territory of the Lake Traverse Reservation. Because the Lake Traverse Reservation is located in South Dakota, South Dakota substantive law governs this action.

## II. South Dakota Negligence Law

South Dakota law defines negligence as "the breach of a duty owed to another, the proximate cause of which results in injury." Stone v. Von Eye Farms, 741 N.W.2d 767, 770 (S.D. 2007). "The existence of a duty owed by the defendant to the plaintiff, which requires the defendant to conform to a certain standard of conduct in order to protect the plaintiff against unreasonable risks, is elemental to a negligence action." Janis v. Nash Finch Co., 780 N.W.2d 497, 500 (S.D. 2010) (*quoting* Poelstra v. Basin Elec. Power Coop., 545 N.W.2d 823, 825 (S.D. 1996)). While a jury generally determines whether a duty has been breached, "the existence of a duty is a question of law to be determined by the court." Id. at 500-501 (*quoting* Small v. McKennan Hosp., 437 N.W.2d 194, 199 (S.D. 1989)).

## III. Natural Accumulation Rule

On January 11, 2013, the plaintiff was an invitee at WWKM. South Dakota "has retained the common-law classifications of trespasser, licensee, and invitee in determining the duty a landowner owes the entrants on his land." Janis v. Nash Finch

5

Co., 780 N.W.2d 497, 501 (S.D. 2010). South Dakota law indicates a possessor of land "owes a business visitor or invitee the duty of using ordinary or reasonable care for the benefit of the invitee's safety." Gunville v. United States, 985 F.Supp.2d 1101, 1104 (D.S.D. 2013) (*quoting* Luke v. Deal, 692 N.W.2d 165, 169 (S.D. 2005)). This general duty includes a duty to keep the property reasonably safe and a duty to warn invitees of concealed, dangerous conditions known to the possessor of land. Id.; Janis v. Finch Co., 780 N.W.2d 497, 501 (S.D. 2010). South Dakota has adopted § 343 of the Restatement (Second) of Torts in determining an occupant's liability to his invitees, which states:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Janis, 780 N.W.2d at 502 (*quoting* Restatement (Second) of Torts § 343 (1965)). "A possessor of land ordinarily is not liable to an invitee for harm caused by a dangerous condition on the land that is known or obvious to the invitee." Id. (*citing* Luther v. City of Winner, 674 N.W.2d 339, 347 (S.D. 2004)). Specifically, "an owner or occupant of property is not liable to pedestrians for injuries resulting from a fall caused by the natural accumulation of snow and ice on a sidewalk in front of the property." Budahl v. Gordon and David Associates, 323 N.W.2d 853, 855 (S.D. 1982). The Honorable Roberto A. Lange in *Gunville* explained:

> In a climate where there are frequent snowstorms and
> sudden changes in temperature, these dangerous conditions
> appear with a frequency and suddenness which defy
> prevention, and usually, correction: consequently, the
> danger from ice and snow in such locations is an obvious
> one, and the occupier of the premises may expect that an
> invitee on his or her premises will discover and realize the
> danger and protect himself or herself against it.

Gunville, 985 F.Supp.2d at 1106 (*quoting* 62A Am.Jur.2d *Premises Liability* § 656).

Three decisions from the United States District Court for the District of South Dakota have applied *Budahl* to slip-and-fall cases. Pond v. United States, 07-cv-5058-JLV, 2010 WL 331920 (D.S.D. Jan. 28, 2010); Sauer v. United States, 04-cv-1021-CBK, Doc. 31 (D.S.D. Mar. 17, 2006); Gunville v. United States, 985 F.Supp.2d 1101 (D.S.D. 2013). "*Pond* and *Sauer* demonstrate that the decision in *Budahl* is not limited to falls on the natural accumulation of ice and snow 'on a sidewalk in front of the property.' " Gunville, 985 F.Supp.2d at 1105 (*quoting* Budahl, 323 N.W.2d at 855). More importantly, *Sauer* and *Pond* clarify that "whether application of *Budahl's* natural accumulation rule requires summary judgment may depend on the source of the iciness and the length of time between the weather condition and the fall." Id. at 1108. In *Sauer*, this Court stated:

> If the ice that caused plaintiff to slip and fall was a result of
> the natural accumulation of ice under wet snow during a
> heavy snow and ice storm, defendant cannot be held
> negligent. If the ice was a result of freezing and thawing
> from the snow piled adjacent to the parking lot, that would
> not be the natural accumulation of ice.

Sauer, 04-cv-1021-CBK, Doc. 31 at 4. The Court will look to such factors in determining whether the dangerous condition was caused by a natural accumulation of ice.

7

The natural accumulation rule may not be applicable to this case. First, the Court must look to whether the source of the dangerous condition was caused by a natural accumulation of ice. Winfield Thompson, one of the maintenance employees, testified that one spot of particular importance was the sidewalk by the entrance near the north edge of the awning, and that it was a normal occurrence for water to accumulate and freeze on the sidewalk near the north side of the awning. W. Thompson Dep. 8:6-9:10, 11:10-22, 12:4-18. Thompson explained, "Normally it's kind of bad there, yeah, when it melts it freezes. It's kind of icy there, right there, by that canopy there." Id. at 11:18-22. Moreover, Thompson testified that he has witnessed an accumulation of water form near the northern edge of the awning as a result of water dripping from the roof. Id. at 12:4-6. Similar to the reasoning in *Sauer*, when ice is allegedly formed as a result of runoff from a roof or awning, the accumulation of ice is no longer a natural accumulation, but rather, an abnormal accumulation. Water falling from the awning and roof and then freezing on the sidewalk near the north side of the awning is not a natural accumulation. Factual questions exist as to what happened here.

The Court must also look to the length of time between the weather condition and the fall. Both parties agree the roads, parking lot, and sidewalks were wet the day of Renville's fall. At 1:56 p.m. on January 11, 2013, the temperature dropped to thirty-one degrees Fahrenheit with the wind increasing from six to eighteen miles per hour. Thompson testified that it is common practice for maintenance employees to check the entrance and sidewalks every hour. Id. at 14:8-12. Furthermore, Angela Johnson, an employee at WWKM Health Care Center, testified that there was ample time for the maintenance employees to put salt around the main entrance of the building. The Court

8

finds the source of the iciness may not have been caused by a natural accumulation of ice. The defendant had sufficient time and resources to make the entrance safe for invitees. Therefore, the natural accumulation rule is not applicable to this case.

## IV. Breach

Next, the defendant asserts that even in the absence of the natural accumulation rule, WWKM kept the premises reasonably safe and thus did not breach the duty of ordinary and reasonable care, as a matter of law. The defendant argues that it fulfilled its duty by placing salt on the premises. The plaintiff disputes this fact. Ms. Johnson testified that no salt was placed outside at the time of her fall and there was ample time for salt or sand to be put on the icy areas of the entrance. Aff. Johnson ¶ 2. Furthermore, the defendant argues that the plaintiff has failed to support an inference that ice existed at the time of the fall. The weather at the time of Renville's fall was below the freezing point and windy, leaving the possibility that ice had formed near the north side of the entrance. Additionally, the plaintiff testified in her deposition that she slipped on a patch of black ice. Renville Dep. 53:25-54:8. Fed. R. Civ. P. 56(c)(1)(A) states: "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials . . ." In this instance, the plaintiff has supported her assertion by citing to her deposition testimony and Ms. Johnson's affidavit. A rational jury could find that the plaintiff slipped on a patch of black ice, and that the defendant breached its duty in keeping its premises reasonably safe. Therefore, when viewing the evidence and reasonable inferences drawn therefrom in a light favorable to

9

the plaintiff, the defendant has failed to meet its burden of showing an absence of a genuine dispute of material fact regarding this issue. An evidentiary hearing will be required to determine these issues and determine the credibility of witnesses.

## V. Contributory Negligence

The final issue is whether the plaintiff is barred from recovery as a result of her own contributory negligence, as a matter of law. SDCL § 20-9-2 states:

> In all actions brought to recover damages for injuries to a person or to that person's property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence does not bar a recovery when the contributory negligence of the plaintiff was slight in comparison with the negligence of the defendant, but in such case, the damages shall be reduced in proportion to the amount of plaintiff's contributory negligence.

"Under this statute, the plaintiff's negligence is compared with the negligence of the defendant, not with 'the ordinarily prudent person.'" Schmidt v. Royer, 574 N.W.2d 618, 627 (S.D. 1998) (*citing* Musilek v. Stober, 434 N.W.2d 765, 768 (S.D. 1989)). "In some cases, whether one's contributory negligence was more than slight may be decided as a matter of law." Id. (*citing* Starnes v. Stofferahn, 160 N.W.2d 421, 426 (1968)). "Slight is defined as 'small of its kind or in amount; scanty; meager.'" Lindhom v. BMW of N. Am., LLC, 202 F.Supp.3d 1082, 1100 (D.S.D. 2016) (*quoting* Wood v. City of Crooks, 559 N.W.2d 558-560 (S.D. 1997)). However, "it is only when the facts show beyond any dispute that plaintiff has committed negligence more than 'slight,' that it is appropriate for the circuit court and this court to hold, as a matter of law, for a negligent defendant." Westover v. East River Elec. Power Coop. Inc., 488 N.W.2d 892, 896 (S.D. 1992). Because the finder of fact in this case must compare the negligence of the

10

defendant in order to determine whether the plaintiff's contributory negligence was more than slight, the Court finds summary judgment is not appropriate, as there is a genuine dispute of material fact as to whether either party is liable for negligence, and if so, the degree of such negligence. Therefore, the defendant is not entitled to summary judgment on this issue.

## ORDER

Now, therefore,

IT IS ORDERED:

1. Defendant's motion, Doc. 21, for summary judgment is denied.

DATED this 24th day of April, 2017.

BY THE COURT:

*Charles B. Kornmann*

_____
CHARLES B. KORNMANN
United States District Judge